Gary Minevich, Cal. (SBN #256136)
Minevich Law, APC
21700 Oxnard St, Ste. 950
Woodland Hills, CA 91367
Tel. 818.878.8740
Fax: 818.878.8745
Email: habeas@minevichlaw.com

Attorney for Petitioner

**DETAINED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert EGIAZARIAN,<br><br>Petitioner,<br>v.<br><br>Thomas P. GILES, Acting Field Office Director of Los Angeles Office of Detention and Removal, U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security;<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY;<br><br>Todd BLANCHE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;<br><br>JAMES JANECKA, in his official capacity as warden of the Adelanto ICE processing center;<br><br>Respondents. | Case No.<br><br>A-240-266-000<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**<br><br>Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief |

**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**

*(Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief)*

## STATEMENT OF FACTS

1. Petitioner Robert Egiazarian is a citizen of RUSSIA and an ethnic Armenian. On January 30, 2022, he presented himself to U.S. Customs and Border Protection at the San Ysidro, California Port of Entry and applied for admission. He was processed as an arriving alien and detained at the Otay Mesa Detention Center in San Diego, California. See Exhibit "A" — Form I-862 Notice to Appear and Record of Determination/Credible Fear Worksheet.

2. Petitioner fled RUSSIA to escape persecution on account of his Armenian ethnicity. On March 14, 2022, a USCIS asylum officer interviewed Petitioner and found his testimony credible; on March 16, 2022, the asylum officer determined that Petitioner had established a credible fear of persecution, that his identity had been established, and that he did not appear to be subject to any bar to asylum or withholding of removal. DHS thereafter issued a Notice to Appear dated March 16, 2022, referring Petitioner to the immigration court for removal proceedings under INA § 240. See Exhibit "A."

3. Following that determination, ICE's Enforcement and Removal Operations office at Otay Mesa conducted a custody review of Petitioner and determined that he should be released on "Parole with no bond restrictions" with "Successful enrollment on Alternative to Detention Program." Petitioner was paroled into the United States pursuant to INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), on or about March 25, 2022, and was directed to report to the ICE Los Angeles Field Office at 300 North Los Angeles Street on April 12, 2022 for enrollment in the Alternatives to Detention ("ATD") program. See Exhibit "B" — ICE

Custody Review Memorandum, Parole Advisal and Scheduling Notification, and DHS Form G-56 Call-In Letter.

4. Petitioner has resided in the United States for approximately 4 years and 8 months.

5. Petitioner has continuously resided in Los Angeles County, California — in Glendale — since his release from ICE custody in March 2022, first at 346 North Kenwood Street, Apt. 2, and currently at 519 South Street, Apt. 101, Glendale, California 91202.

6. Petitioner applied for asylum. His Form I-589, Application for Asylum and for Withholding of Removal, was filed with and accepted by the Immigration Court on June 12, 2024. See Exhibit "D" — Immigration Court Records.

7. Prior to his detention, Petitioner held valid employment authorization issued by USCIS. Petitioner is self-employed as a professional mover and supports himself through that work.

8. Petitioner has appeared for every appointment DHS has ever scheduled for him. He reported to the ICE Los Angeles Field Office on April 12, 2022 as directed and was enrolled in the ATD program; ICE's own Form I-220A records that he "Reported" and set his next reporting date. He continued to report as directed thereafter. On his May 1, 2023 report, ICE's Form I-220R receipt recorded: "Identity verified through CART. System check show no new/derogatory information. No wants, no warrants," and set his next reporting date for April 30, 2024, which he attended. See Exhibit "C" — ICE Reporting Records. After the April 2024 appointment, ICE informed Petitioner that he was no longer required to report until further notice.

9. ICE thereafter called Petitioner back in for in-person check-ins in January 2026, April 2026, and June 2026. Petitioner appeared each time as instructed. At the June 2026 check-in, ICE

enrolled Petitioner in the ATD program's SmartLINK monitoring application, and from that date forward he was subject to — and fully complied with — home visits by ICE contractors, periodic photographic ("selfie") check-ins through SmartLINK, and monthly in-person reporting.

10. Petitioner has no criminal convictions. His only contacts with the criminal justice system are pending traffic matters, none of which involves violence, weapons, drugs, or theft. First, Petitioner received a citation for exceeding 100 miles per hour (Cal. Veh. Code § 22348(b)), an infraction, and missed the associated court date, as a result of which a bench warrant issued (Warrant No. RN1040419990). On June 22, 2026, Glendale police officers took Petitioner into custody on that warrant; he was cited and released the same day with a new court date. Second, on August 21, 2026, Petitioner received a correctable citation in Burbank for failure to provide proof of insurance (Cal. Veh. Code § 16028(a)), an infraction. Third, shortly after midnight on September 10, 2026, Petitioner was involved in a traffic collision in El Segundo after his tire blew out; the responding officers arrested him for alleged reckless driving (Cal. Veh. Code § 23103(a)), a misdemeanor. Petitioner was held overnight at the Hawthorne police station and released the following morning, September 10, 2026, on his written promise to appear pursuant to Cal. Penal Code § 853.6, with court dates set for November 19, December 10, and December 23, 2026. See Exhibit "E" — Traffic Citations and Related Records. All of these matters remain pending; Petitioner has not been convicted of any offense, and he is presumed innocent.

11. That same day, September 10, 2026, Petitioner appeared, as instructed, for his regularly scheduled in-person ATD check-in at the ICE office located at 20525 Nordhoff Street, Chatsworth, California 91311. He was processed and released without incident. Later that

same day, an ICE officer telephoned Petitioner and instructed him to return to the office the following day. Petitioner appeared as directed on September 11, 2026, and was arrested and taken into ICE custody — more than four and a half years after his entry and parole into the interior. ICE's own Notice to EOIR (Form I-830E), filed with the Immigration Court on September 14, 2026, records that Petitioner was "Detained by ICE on 09/11/2026" at the Adelanto ICE Processing Center. See Exhibit "D."

12. Petitioner is currently detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301. His removal proceedings, in which his asylum application remains pending, have been transferred to the Adelanto Immigration Court, where they are assigned to Immigration Judge Bryan E. Depowell, and a master calendar hearing has been set for October 7, 2026 at 8:00 a.m. Petitioner is represented in those proceedings by undersigned counsel. See Exhibit "D" — Notice of Hearing dated September 22, 2026.

13. Petitioner's brother, Karen Egiazarian, resides in Glendale, California, and served as Petitioner's sponsor upon his release from custody in 2022; Petitioner has lived with or near his brother throughout his time in the United States. Petitioner's family and community ties in this district, his established residence and self-employment, and his pending asylum claim are strong indicators that he will not abscond and will instead remain to pursue his asylum claim.

14. Petitioner has now remained in ICE immigration detention since September 11, 2026. His continued confinement has deprived him of his liberty, his livelihood, and his ability to prepare his asylum case with his counsel, and continues to cause serious harm.

15. Since his arrest, ICE has not set bond, has not provided Petitioner any written notice terminating his parole or stating the reasons for his re-detention, and has provided

Petitioner no individualized custody determination of any kind. No neutral adjudicator has ever found — by any standard of proof — that Petitioner is a flight risk or a danger to the community.

16. Petitioner's re-detention is not premised on any lawful determination of changed circumstances. DHS itself determined in March 2022 that Petitioner's release on parole, without bond, was appropriate, and for four and a half years thereafter he complied with every condition of that release: he reported at every appointment, submitted to SmartLINK monitoring, home visits, and monthly reporting, applied for asylum, and obtained and maintained employment authorization. Pending traffic infractions and a single pending misdemeanor traffic charge — on which the State of California itself released Petitioner on his written promise to appear rather than hold him — cannot supply a changed circumstance justifying indefinite civil detention without any individualized hearing. ICE processed and released Petitioner at his September 10, 2026 check-in — hours after his release from local custody — only to re-summon and detain him the next day.

17. Respondents detained Petitioner not based on a lawful, individualized assessment of his personal circumstances, but pursuant to a policy of re-detaining paroled, compliant asylum applicants when they appear for their scheduled check-in appointments — a practice that punishes precisely the compliance that conditions of release are designed to secure.

18. Because Petitioner was paroled and released into the interior of the United States, where he has been physically present for more than four and a half years, Petitioner has a protected liberty interest in his continued release, and his re-detention without any individualized determination or bond hearing cannot lawfully justify his continued civil detention.

19. Respondents now seek to keep Petitioner detained without a meaningful opportunity to seek a bond hearing. See 8 U.S.C. § 1225. Respondents do so based not on Petitioner's personal circumstances or individualized facts, but on a mechanical position that arriving aliens and paroled entrants are categorically ineligible for bond, applied without regard to Petitioner's actual immigration history and years of compliance.

20. Respondents cannot evade due process requirements so easily. The U.S. Constitution requires Respondents to provide at least the rights available to Petitioner at the time he filed his application for relief.

21. The Constitution protects Petitioner — and every other person present in this country — from arbitrary deprivations of his liberty and guarantees him due process of law. The government's power over immigration is broad, but as the Supreme Court has declared, it "is subject to important constitutional limitations." Zadvydas v. Davis, 533 U.S. 678, 695 (2001). "Freedom from bodily restraint [has] always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992).

22. Petitioner seeks declaratory and injunctive relief to compel his immediate release from the immigration jail where he has been held by DHS since being unlawfully detained, without first being provided a constitutionally adequate hearing to determine whether his incarceration is justified.

23. Petitioner has a protected liberty interest in remaining out of custody. Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. Respondents' re-detention of Petitioner — without any individualized custody determination, without written notice of the

termination of his parole as required by 8 C.F.R. § 212.5(e)(2)(i), and despite DHS's own prior determination that his release on parole was appropriate — denied Petitioner of his due process rights.

24. Absent review in this Court, no other neutral adjudicator will examine Petitioner's rights: Respondents will continue — unchecked — to detain him unlawfully under 8 U.S.C. § 1225(b)(1), INA § 235(b)(1), without due process.

25. Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to release Petitioner from detention within 10 days or, in the alternative, to order that Petitioner be afforded, within 7 days, a bond hearing before a neutral adjudicator at which Respondents bear the burden of justifying his continued detention by clear and convincing evidence.

26. Petitioner's continued detention is arbitrary and unlawful, and he requests that this Court order his immediate release from ICE custody.

## JURISDICTION

27. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.

28. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

29. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

30. Federal District Courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness of their detention. Zadvydas, 533 U.S. at 687.

31. Federal courts also have federal question jurisdiction, through the Administrative Procedure Act ("APA"), to deem unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with law. 5 U.S.C. § 706(2)(A). APA claims are cognizable on habeas. 5 U.S.C. § 703 (judicial review of agency action under the APA may be proceeded by any applicable form of legal action, including but not limited to habeas corpus). The APA affords a right of review to a person who is adversely affected or harmed by agency action.

## VENUE

32. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is detained within this district at the Adelanto Detention Facility in Adelanto, California. Furthermore, a substantial part of the events or omissions giving rise to this action occurred and continue to occur within this district. No real property is involved in this action. 28 U.S.C. § 1391(e).

## CUSTODY AND REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

33. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the Respondents "forthwith" unless Petitioner is not entitled to relief. Under 28 U.S.C. § 2243, once an order to show cause issues, the respondent must ordinarily file a return within three days, unless the court for good cause allows additional time, not exceeding twenty days.

34. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." Fay v. Noia, 372 U.S. 391, 400 (1963).

35. Petitioner is "in custody" for the purpose of 28 U.S.C. § 2241 because he was arrested by Respondents and remains in their legal and physical custody at the Adelanto Detention Facility in California. He is under Respondents' and their agents' direct control.

**PARTIES**

36. Petitioner Robert Egiazarian is a citizen of RUSSIA who has been in immigration detention since September 11, 2026, when he was arrested after being summoned back to the ICE office in Chatsworth, California the day after his scheduled ATD check-in. ICE did not set bond and has provided no individualized custody determination. Petitioner has resided in the United States since January 2022.

37. Respondent Thomas P. GILES is the Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations Division. As such, Thomas P. GILES is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

38. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention.

Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

39. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

40. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

41. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

42. Respondent JAMES JANECKA is the Warden of the Adelanto ICE processing center, where Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

## LEGAL FRAMEWORK

### ICE'S CONTINUED DETENTION OF PETITIONER, WITHOUT REVIEWING HIS CUSTODY UNDER ICE POLICY, VIOLATES THE ADMINISTRATIVE PROCEDURE ACT AND DUE PROCESS.

43. ICE's long-standing policy is to release noncitizens immediately following a grant of asylum or other relief absent exceptional circumstances. ICE's own regulations likewise provide that parole may be terminated only "upon written notice to the alien." 8 C.F.R. § 212.5(e)(2)(i).

44. Under the Accardi doctrine, which originated in the context of an immigration case and has been developed through subsequent immigration case law, agencies are bound to follow their own rules that affect the fundamental rights of individuals, even self-imposed policies and processes that limit otherwise discretionary decisions. See Accardi v. Shaughnessy, 347 U.S. 260, 266 (1954) (holding that BIA must follow its own regulations in its exercise of discretion); Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures … even where the internal procedures are possibly more rigorous than otherwise would be required.").

45. The requirement that an agency follows its own policies is not "limited to rules attaining the status of formal regulations." Montilla v. INS, 926 F.2d 162, 167 (2d Cir. 1991). Even an unpublished policy binds the agency if "an examination of the provision's language, its context, and any available extrinsic evidence" supports the conclusion that it is "mandatory rather than merely precatory." Doe v. Hampton, 566 F.2d 265, 281 (D.C. Cir. 1977); see also Morton, 415 U.S. at 235-36; United States v. Heffner, 420 F.2d 809, 813 (4th Cir. 1969).

46. When agencies fail to adhere to their own policies as required by Accardi, courts typically frame the violation as arbitrary, capricious, and contrary to law under the APA, see Damus v. Nielsen, 313 F. Supp. 3d 317, 337 (D.D.C. 2018), or as a due process violation, see Sameena, Inc. v. United States Air Force, 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.").

47. Prejudice is generally presumed when an agency violates its own policy. See Montilla, 926 F.2d at 167 ("We hold that an alien claiming the INS has failed to adhere to its own regulations … is not required to make a showing of prejudice before he is entitled to relief. All that needs be shown is that the subject regulations were for the alien's benefit and that the INS failed to adhere to them."); Heffner, 420 F.2d at 813.

48. To remedy an Accardi violation, a court may direct the agency to properly apply its policy, see Damus, 313 F. Supp. 3d at 343, or a court may apply the policy itself and order relief consistent with the policy. See Jimenez v. Cronen, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (scheduling bail hearing to review petitioners' custody under ICE's standards because "it would be particularly unfair to require that petitioners remain detained … while ICE attempts to remedy its failure").

49. Here, Petitioner falls squarely into this category: ICE — by re-detaining a paroled, fully compliant asylum applicant without written notice of parole termination and without any individualized custody review — has failed to act as required by its own regulations, its procedures, and controlling law, and Petitioner's continued detention requires this Court's intervention.

## CLAIMS FOR RELIEF

### GROUND ONE
### VIOLATION OF FIFTH AMENDMENT RIGHT TO DUE PROCESS

*Petitioner has the right to challenge the legality of his detention.*

50. The allegations in the above paragraphs are realleged and incorporated herein.

51. Petitioner has due process rights to challenge his detention. Zadvydas v. Davis, 533 U.S. 678, 693, 695 (2001) (while noncitizens outside the United States' "geographic borders"

lack constitutional protections, all "persons" within them are protected by the Due Process Clause, regardless of immigration status); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205-06 (9th Cir. 2022) (though constitutional rights of citizens and noncitizens "are not coextensive," noncitizens are entitled to due process, including to challenge detention pending proceedings).

52. As the Ninth Circuit held, the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023). The Due Process Clause allows Petitioner to challenge his detention.

53. Petitioner challenges his deprivation of liberty and detention, not the adequacy of the procedures the immigration laws afford him with respect to admission. Petitioner is solely challenging his re-detention without any individualized custody determination and the denial of any opportunity to seek bond based on Respondents' mechanical treatment of him as an arriving alien, notwithstanding his parole into and more than four and a half years of residence in the interior of the United States. He is not bringing a constitutional claim with respect to the procedures governing his legal admission into the United States.

54. To the extent Respondents take the extraordinary position that Petitioner has no due process rights at all, that is unsupported by law and would have gruesome practical consequences: "If excludable [noncitizens] were not protected by even the substantive component of constitutional due process, … we do not see why the United States government could not torture or summarily execute them. … [W]e conclude that government treatment of

excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment." Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc); see also Jean v. Nelson, 472 U.S. 846, 874 (1985) (Marshall, J., dissenting). Thus, there is no question that Petitioner has the right to challenge the constitutionality of his prolonged detention under the Due Process Clause of the Fifth Amendment of the Constitution.

55. The relief Petitioner is entitled to is not limited to a bond hearing; Petitioner has a protected liberty interest in remaining out of custody. See, e.g., Pinchi, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after his initial apprehension reflected a determination by the government that he was neither a flight risk or a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless he no longer meets those criteria."); Noori, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); Matute v. Wofford, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

56. This Court has accordingly found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority. See, e.g., Karakhanyan v. Warden of Otay Mesa Detention Center, 3:25-cv-03454-JO-MMP; Romik Parunakyan v. Warden of Otay Mesa Detention Center, 25-cv-3739-LL-MSB; L.S. v. Warden of Otay Mesa Detention Center; M.F. v. Warden of Otay Mesa Detention Center, 3:25-cv-3599-CAB-MSB; Vikas Kumar v. Christopher Larose, Warden, Otay Mesa Detention Center, 25-CV-3796 JLS (DDL); Aigul Kazybayeva v. Warden, Otay Mesa Detention Center, 3:26-cv-

00421-GPC-MMP; Dariya Karmamoldoyeva v. Warden, Otay Mesa Detention Center, 3:26-cv-00423-GPC-MSB; Dugar Dambaev v. Warden, Imperial Detention Center, 26-cv-1182-JO-SBC; Roman T. v. Warden, Golden State Annex Detention Facility, 1:26-cv-02385-TLN-JDP.

57. Likewise, in Liping Zhao v. Christopher J. Larose, 26-cv-1285-JES-DDL, this Court granted a writ of habeas corpus releasing petitioner from custody to the conditions of his preexisting release on recognizance on due process grounds. And in Khachaturian v. Giles, No. 2:26-cv-09976-DFM (C.D. Cal. Sept. 17, 2026), this Court granted a materially identical petition brought by a paroled Russian asylum applicant re-detained at his ICE check-in, and ordered his forthwith release on his prior conditions of release.

58. Furthermore, relief was granted in similar matters. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025); Duong v. Kaiser, --- F. Supp. 3d ---, 2025 WL 2689266, at *7-10 (N.D. Cal. 2025); Pinchi, 2025 WL 2084921, at *5; Gonzalez Salazar, 2025 WL 3063629, at *6; Abdul Kadir v. Larose, No. 25cv1045-LL-MMP, 2025 WL 2932654, at *6 (S.D. Cal. Oct. 15, 2025); Matute v. Wofford, No. 1:25-cv-01206-KES-SKO (HC), 2025 WL 2495767, at *8 (E.D. Cal. Oct. 3, 2025).

59. ICE has violated Petitioner's due process rights by denying Petitioner a lawful, individualized bond determination. Specifically, ICE summoned Petitioner back to its office the day after his scheduled ATD check-in, arrested him upon his arrival, and has detained him ever since without setting bond, without written notice of parole termination, and without any individualized finding — let alone one by clear and convincing evidence — that he is a flight risk or a danger, when in fact Petitioner was paroled into the United States in March 2022 after DHS's own custody review, and had resided in the interior of

the United States, in full compliance with all conditions of his release, including SmartLINK monitoring and home visits, for more than four and a half years before his ICE arrest.

60. As a remedy, this Court should conduct its own review of Petitioner's custody and order his release, recognizing that Petitioner was paroled and released into the interior and has a protected liberty interest in his continued release. In the alternative, and at a minimum, due process requires that Petitioner receive a prompt, individualized bond hearing before a neutral adjudicator — whether this Court or an Immigration Judge — at which Respondents bear the burden of proving by clear and convincing evidence that he is a danger to the community or a flight risk, and at which the adjudicator must consider alternatives to detention and Petitioner's ability to pay any bond. Respondents' position that Petitioner is categorically barred from any such hearing because he was processed as an arriving alien in January 2022 cannot be squared with his parole, his more than four and a half years of residence in the interior, or the Due Process Clause.

## GROUND TWO
## VIOLATION OF 8 U.S.C. § 1231(a)(6) AND THE DUE PROCESS CLAUSE

*Detention, whether styled as mandatory or discretionary, is subject to constitutional limits.*

61. The allegations in the above paragraphs are realleged and incorporated herein.

62. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690.

63. Petitioner has an interest in remaining with his community and his brother, returning to his work, and continuing the process of seeking asylum. See Morrissey v. Brewer, 408 U.S.

471, 482 (1972) ("Subject to the conditions of his release on recognizance, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachment of normal life.").

64. The risk of an erroneous deprivation of Petitioner's liberty interest is high. Respondents re-detained Petitioner without any individualized custody determination at all. There is no individualized finding — let alone one supported by clear and convincing evidence — that Petitioner is a danger to the community or a flight risk. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017).

65. Petitioner has no criminal convictions. His only contacts with the criminal justice system are pending traffic matters — two infractions and a single pending misdemeanor charge of reckless driving arising from a collision — on each of which the State of California released him on citation with a promise to appear. He has had work authorization and has been self-employed. "Once a noncitizen has been released, the law prohibits federal agents from rearresting [him] merely because he is subject to removal proceedings." Saravia, 280 F. Supp. 2d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances — namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." Id. Unadjudicated traffic charges, on which Petitioner is presumed innocent and on which local authorities themselves saw no need to hold him, are not evidence that he is dangerous; and a man who reported to ICE at every appointment for four and a half years, submitted to SmartLINK monitoring and home visits, and returned to the ICE office the day after his check-in simply because an officer asked him to, has not become a flight risk. Even if Respondents believed otherwise, due process required them to make that determination through a lawful, individualized process before a neutral

adjudicator, on notice to Petitioner and with an opportunity to be heard — not by summoning him to an office and jailing him. Respondents have not presented — and cannot present — clear and convincing evidence of danger or flight risk.

66. The government's interest in detaining Petitioner is "low." See Pinchi, 2025 WL 2084921, at *5; Matute, 2025 WL 2817795, at *6; Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019). Respondents cannot point to any legitimate interest served by Petitioner's continued detention, nor any burden on the government from releasing Petitioner to the conditions of supervision — including SmartLINK monitoring, home visits, and monthly in-person reporting — that he faithfully observed before his arrest.

67. Therefore, because Respondents have continued to detain Petitioner without any individualized custody determination or bond hearing — despite his parole, his more than four and a half years of continuous residence and full compliance, and DHS's own prior determination that his release was appropriate — Petitioner's detention violates the Due Process Clause and is unlawful. See, e.g., Alegria Palma v. Larose, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025); Navarro Sanchez, 2025 WL 2770629, at *5.

68. Petitioner's continued detention, without any lawful, individualized custody determination and without proper factual or legal foundation, denies Petitioner his due process rights. His continued detention violates 8 U.S.C. § 1231(a)(6), and he must be immediately released — or, at a minimum, afforded a constitutionally adequate bond hearing before a neutral adjudicator at which the government bears the burden of proof by clear and convincing evidence.

69. Furthermore, Petitioner is challenging his detention on constitutional grounds, not statutory grounds alone. Notwithstanding the fact that he is being detained pursuant to section 1225(b), Petitioner's detention is unequivocally subject to constitutional limits. The Supreme Court has not precluded noncitizens from bringing as-applied constitutional challenges to their mandatory detention. Jennings v. Rodriguez, 583 U.S. 281 (2018), "did not explicitly address constitutionality arguments." Likewise, while Demore v. Kim, 538 U.S. 510 (2003), rejected a facial challenge to mandatory detention under § 1226(c), the Supreme Court has explicitly recognized the availability of judicial review over as-applied challenges to detention, including mandatory detention. See, e.g., Nielsen v. Preap, 586 U.S. 392, 420 (2019); Demore, 538 U.S. at 532-33 (Kennedy, J., concurring). This Court has accordingly found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority. See, e.g., Vikas Kumar v. Christopher Larose, 25-CV-3796 JLS (DDL); Aigul Kazybayeva v. Warden, Otay Mesa Detention Center, 3:26-cv-00421-GPC-MMP; Dariya Karmamoldoyeva v. Warden, Otay Mesa Detention Center, 3:26-cv-00423-GPC-MSB (granting a writ of habeas corpus releasing petitioner from custody to the conditions of his preexisting parole on due process grounds).

70. This Court should so hold as well.

## GROUND THREE

## ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

*Petitioner's ongoing detention — the re-detention of a paroled, fully compliant asylum applicant without notice and without any individualized custody determination — is arbitrary and capricious, and his immediate release is required.*

71. The allegations in the above paragraphs are realleged and incorporated herein.

72. Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

73. Respondents' detention of Petitioner is arbitrary and capricious because it rests on no individualized assessment whatsoever, disregards ICE's own regulation requiring written notice of parole termination, 8 C.F.R. § 212.5(e)(2)(i), and is contradicted by the undisputed record. Petitioner presented himself at a port of entry on January 30, 2022, established a credible fear of persecution, was paroled pursuant to INA § 212(d)(5) after ICE's own custody review found no bond restrictions necessary, was released into the interior, resided continuously in Los Angeles County, complied with every reporting, monitoring, and check-in obligation ICE ever imposed, and was arrested only when ICE summoned him back to its office the day after he had appeared for, and been released from, his scheduled September 10, 2026 check-in — more than four and a half years after his entry. His continued detention is therefore not in accordance with law, and he must be released.

74. The Ninth Circuit in Singh stressed that "it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual — deprivation of liberty — is so significant." See Singh, 638 F.3d at 1205; Black, 103 F.4th at 157-58 (observing that where "an individual's liberty is at stake, the Supreme Court has consistently used [a clear and convincing] evidentiary standard for continued detention"); id. at 159 (reiterating that the government bears the burden of meeting this standard even where an individual is detained pursuant to mandatory detention). This Court should likewise hold the government to its heavy burden to justify Petitioner's continued civil detention — a burden Respondents cannot carry on this record — and order his release.

75. Moreover, any legitimate government interest in securing Petitioner's appearance at future proceedings can be fully served by alternatives to detention — as it was for four and a half years, and as it was being served through SmartLINK monitoring and home visits at the very moment ICE chose to detain him — including the conditions of his preexisting release. See, e.g., Hernandez, 872 F.3d at 994 ("If the government is setting monetary bonds to ensure appearance at future proceedings, there is no legitimate reason for it not to consider the individual's financial circumstances and alternative conditions of release.").

76. Thus, due process and Ninth Circuit precedent require that the government bear the burden of justifying Petitioner's ongoing and prolonged detention by clear and convincing evidence, on a lawful and accurate factual basis. Respondents have never attempted — and on this record cannot — carry that burden. The adequate remedy is Petitioner's immediate release; in the alternative, this Court should order a bond hearing before a neutral adjudicator at which Respondents are held to that burden.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

a) Assume jurisdiction over this matter;

b) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

c) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a)(6);

d) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner forthwith on the conditions of his preexisting release;

e) In the alternative, order Respondents to provide Petitioner, within 7 days, an individualized bond hearing before a neutral adjudicator (this Court or an Immigration Judge) at which Respondents bear the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk, and at which the adjudicator must consider alternatives to detention and Petitioner's ability to pay, and order Petitioner's release if Respondents fail to meet that burden;

f) Enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal;

g) Enjoin Respondents from re-detaining Petitioner without first following all procedures set forth in 8 C.F.R. §§ 212.5(e), 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures;

h) Enjoin Respondents from removing Petitioner unless they provide written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand; and

i) Grant any further relief this Court deems just and proper.

DATED 25th day of September 2026

Respectfully submitted,

______________________________

Gary Minevich, Esq.

Attorney for Petitioner